**Barbara J. BUZZELLI, Appellant**

v.

**PORT AUTHORITY OF ALLEGHENY COUNTY.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 1995.

Decided April 16, 1996.

Michael A. Murphy, for Appellant.

Terrance R. Henne, for Appellee.

Before DOYLE and SMITH, JJ., and MIRARCHI, Senior Judge.

SMITH, Judge.

Barbara J. Buzzelli appeals from an order of the Court of Common Pleas of Allegheny County denying her post-trial motions seeking a new trial following a jury verdict for the defendant Port Authority of Allegheny County (Port Authority) in Buzzelli's action to recover damages for injuries she allegedly sustained while riding a Port Authority bus. The question presented is whether the trial court erred in denying Buzzelli's requested points for charge that if the jury found an unusual or extraordinary stop, and the Port Authority provided no explanation, the Port Authority was negligent or at least a presumption of negligence could be inferred.

I.

Buzzelli testified on liability as follows. On the morning of November 22, 1991, she was standing on a crowded 71C Port Authority bus near the middle, facing the left and holding on to the railing on a seatback because she is too short to reach the overhead rail. Although she could not see out the steamed windows, she estimated that the bus accelerated away from a bus stop to 35 or 40 miles per hour (mph) in an area with a 25 mph speed limit, then the driver suddenly slammed on the brakes and stopped. The crush of other standing passengers thrown forward by the sudden stop knocked her off balance. Buzzelli fell and other passengers helped her to her feet; she immediately felt pain through her shoulder and up into her neck. The bus remained stopped for at least a minute, but no passengers got on or off.

Buzzelli did not say anything to the driver when she got off the bus at her regular stop in downtown Pittsburgh; she explained that she was embarrassed; she was in pain but she thought it would go away, and she needed to get to work. She had difficulty walking the few blocks to her building, and when she arrived at work she realized that she was

seriously hurt and called the Port Authority and reported the particulars of the accident. Her injury ultimately proved to be a herniated disk in her neck, which required surgery and some effects of which are likely to be permanent.

Belavardi Shankar, Ph.D., testified that he also was a regular rider on the same route, and he was acquainted with Buzzelli, without knowing her name, from casual conversations at the bus stop. Dr. Shankar recalled the incident and testified that he was standing toward the front of the bus. It was going at a normal rate of speed and actually accelerating immediately before the stop. But for his holding on tightly as he always does because of a prior knee operation he would have fallen; he bumped into others near him and almost everyone who was standing bumped into each other. He heard a scream and saw others helping a woman up from the floor. From his experience riding buses he characterized it as an unusual stop, similar to one where something came in front of the bus.

Andrew J. Jackson, the driver, since retired, testified that he recalled nothing unusual from the period in question; he never heard a scream or threw a passenger. He never got a bus up to 45 mph on the road involved. On cross-examination, Jackson conceded that a fair description of his testimony was that he did not have a specific recollection of the day in question; rather, he did not recall anything unusual such as described by Buzzelli and Dr. Shankar from around the time in question. No one from the Port Authority made contact with him concerning the incident until approximately 2½ months later, when he was requested to fill out an incident report. He left all of the blocks for answers to specific questions blank and wrote that he had no knowledge of the occurrence. He agreed that the incident would have been fresher in his mind if someone had asked him about it in November 1991.

## II.

■ The trial court's charge to the jury concerning the law applicable to cases of this type, often called "jerk or jolt" cases, was taken in large part from the Supreme Court's discussion in *Connolly v. Philadelphia Transp. Co.*, 420 Pa. 280, 216 A.2d 60 (1966). In that case a bus in heavy traffic on the square around Philadelphia City Hall stopped suddenly when a truck cut in front of it, throwing a passenger to the floor and knocking her unconscious. The Supreme Court stated:

> A common carrier for hire, although not an insurer, owes to its passengers the highest degree of care.... In *Staller v. Phila. R.T. Co.*, 339 Pa. 100, 103, 14 A.2d 289[, 291] (1940), in reiterating a long and well established rule, we stated: "It is well established by a long line of decisions that testimony indicating that a moving trolley car jerked suddenly or violently is not sufficient, of itself, to establish negligence in its operation. There must be a showing of additional facts and circumstances from which it clearly appears that the movement of the car was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation, and nothing short of evidence that the allegedly unusual movement had an extraordinarily disturbing effect upon other passengers, or evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently establishes the unusual character of the jolt or jerk, will suffice." See *Lambert v. Pgh. Rwys. Co.*, 405 Pa. 364, 175 A.2d 870 (1961); *Schilling v. Pgh. Rwys. Co.*, 394 Pa. 126, 145 A.2d 688 (1958).
>
> *The basis for an unusual or extraordinary stop by a bus resulting in injury to a passenger calls for some explanation on the part of the common carrier,* and although negligence may not be inferred from a sudden stop sufficiently explained, testimony of witnesses, however, that the excessive speed of the bus was a contributing cause of the accident *certainly requires some explanation or rebuttal.*

*Connolly,* 420 Pa. at 283–284, 216 A.2d at 62 (emphasis added).

Buzzelli's Proposed Points for Charge included No. 4:

> An unusual and extraordinary stop calls for some explanation upon the part of a

common carrier. If you find that the stop in question was unusual and extraordinary, and you believe that the Defendant Port Authority has not provided a sufficient explanation for the stop, you may find the Defendant negligent.[1]

In chambers the trial court indicated that Point No. 4 would not be given as stated but that it would be covered. The trial court's charge on this issue was in part virtually identical to the first paragraph quoted above from *Connolly.* The charge then continued:

> Although negligence may not be inferred from a sudden stop which is sufficiently explained, testimony of witnesses that excessive speed of the bus was a contributing factor of an incident, if believed by you, may be evidence of an unusual or extraordinary occurrence, as may other facts and circumstances. It is not necessary that the plaintiff prove that other persons on the bus were injured.

N.T., pp. 252–253. The trial court's charge thus omitted the language emphasized from the quotation from *Connolly* above.

Buzzelli argues that the clear meaning of *Connolly* is that, if a plaintiff's evidence leads a jury to find an unusual or extraordinary stop, then a presumption, if not a finding of negligence arises. The jury must be informed that if there was an unusual or extraordinary stop, then the defendant carrier has a duty to go forward to provide a sufficient explanation for the stop to avoid an inference of negligence.[2]

A review of the history of the "jerk or jolt" doctrine, which traces its origins to the advent of trolley service around the turn of this century, is necessary for a full understanding of the issue presented. In *Goodhart v. Columbia & Montour Elec. Ry. Co.,* 36 Pa.Superior Ct. 441 (1908), as a passenger turned from the aisle into the forward-facing seat, the car started suddenly with an unreasonable jerk, requiring her to catch and hold to the seat to keep from falling to the floor; her knee struck the seat and she suffered severe spraining and torn ligaments. Her mother and a disinterested passenger corroborated the violent and unusual nature of the start. In affirming the trial court's refusal of the defendant's request for judgment n.o.v., the court held that it was unquestionably proper to permit the jury to draw an inference of negligence under the circumstances described.

*Tilton v. Philadelphia Rapid Transit Co.,* 231 Pa. 63, 79 A. 877 (1911), contains an early statement of the requirement of an explanation for an unusual stop. There a trolley car stopped suddenly and violently, throwing a passenger into the seat ahead and injuring him. The Supreme Court reversed the grant of a compulsory nonsuit, holding that "[s]uch an unusual manner of stopping the car called for explanation by the defendant." *Tilton,* 231 Pa. at 65, 79 A. at 877. Even if a collision with a wagon actually occurred, in the absence of an explanation presented to the jury the evidence of the unusual nature of the stop was sufficient to justify an inference of negligence.

The doctrine developed further in later decades. In *Zieger v. Philadelphia Rapid Transit Co.,* 84 Pa.Superior Ct. 541 (1925), the court affirmed entry of judgment n.o.v. in favor of the defendant where a passenger testified that he was walking toward a seat after boarding and was thrown down by an "awful jerk" of the trolley car in starting. Two other riders used the same phrase to describe the motion, but neither testified that the movement had any effect on them or on others. The court held:

> We are of the opinion that even the term, "awful jerk" when not accompanied by testimony inherently establishing its extraordinary character or by evidence of its effect on other passengers, who must have been disturbed to some extent by an un-

---

1. Proposed Point for Charge No. 3 was essentially identical except for stating that, if the jury believed there was not a sufficient explanation, the court directed them to find the Port Authority negligent. The trial court found no authority for a directed verdict, and Buzzelli did not object to its denial.

2. The scope of this Court's review of a denial of a motion for a new trial is limited to determining whether the trial court abused its discretion or committed error of law. *DeLuca v. School Dist. of Philadelphia,* 654 A.2d 29 (Pa.Cmwlth.1994).

usual or extraordinary jolt of the car, is too vague to sustain a finding of negligence. *Zieger*, 84 Pa.Superior Ct. at 543. *Iszard v. Philadelphia Rapid Transit Co.*, 100 Pa.Superior Ct. 240 (1930), pointed out that it is not difficult to lose one's balance while walking in a moving street car and distinguished cases such as *Tilton*, where one sitting is thrown violently from a seat, which inherently shows the extraordinary nature of the stop.

The next substantial pronouncement on this subject by the Supreme Court came in *Staller v. Philadelphia Rapid Transit Co.*, 339 Pa. 100, 14 A.2d 289 (1940), the case quoted in *Connolly*. There a passenger testified that as he was standing without support near an open window he was shaken by movements of the trolley car such that his arm went out the window and was broken by making contact with an oncoming car. The plaintiff presented no evidence of any effect on other passengers. The Court affirmed a grant of judgment upon the whole record in favor of the defendant. The Court in *Hufnagel v. Pittsburgh Rys. Co.*, 345 Pa. 566, 549, 29 A.2d 4, 6 (1942), held "[I]t must clearly be shown not only that they were affected by the movement, but to a greater extent than is usual. . . ." *Schilling v. Pittsburgh Rys. Co.*, 394 Pa. 126, 145 A.2d 688 (1958), applied the test found in *Staller* and affirmed the entry of compulsory nonsuits, where a plaintiff testified that the motorman jammed on the brakes seconds after a thud or bump, causing one seated plaintiff to be thrown against a stanchion and one standing by the farebox to be thrown into contact with the front of the car.

### III.

In the present case, the trial court's opinion in support of its denial of the motion for a new trial states that Buzzelli had not demonstrated additional facts and circumstances from which it clearly appeared that the movement of the car was so unusual or extraordinary as to be beyond a passenger's reasonable anticipation, hence Points for Charge Nos. 3 and 4 were properly denied. This Court disagrees. As the above historical review of cases shows, one independent and sufficient basis for proving an unusual or extraordinary stop is to show an accident, the manner of occurrence of which inherently establishes the unusual character of the stop. Here, both Buzzelli and her witness testified that the bus was accelerating immediately before it was taken to a complete stop by a hard application of the brakes. Buzzelli testified further that the bus sat stopped in the street for over a minute, without taking on or letting off passengers. There are no circumstances in which such a stop is within "the ordinary and customary operation" of a common carrier bus. *See Sanson v. Philadelphia Rapid Transit Co.*, 239 Pa. 505, 86 A. 1069 (1913). Such testimony was sufficient, in itself, to establish an unusual stop requiring an explanation from the carrier. *Tilton.*[3]

As for the effect on other passengers, Buzzelli testified that it was the crush of other standing riders thrown into her that caused her to fall. Dr. Shankar stated that he would have fallen but for his practice of always gripping a railing tightly. Cases unquestionably have characterized quite substantial jolts as being not unusual. On this closer question, which essentially requires the Court to distinguish among degrees of jolting or lurching, the Court concludes that Buzzelli's evidence also was sufficient. For standing passengers to be thrown forward without the ability to control their movement, such that they knock a passenger who is holding on to a railing off her feet, is an effect to a greater extent than is usual. *Hufnagel.* If the effects described here were held to be within the reasonable anticipation of transit riders, then the principle that common carriers are held to the highest degree of care in regard to their customers would be rendered virtually meaningless.

---

**3.** The Port Authority contends that the bus was not involved in an accident, hence Buzzelli's case must rest on proof of the effect of the stop on other passengers. The review of cases shows that the "accident" referred to in the *Staller* test is the injury to the plaintiff. Such accident may or may not be caused by the carrier's negligence, depending on the circumstances, but the test does not require proof of a collision with another vehicle or with something else in order to establish an "accident."

Because Buzzelli's evidence, if credited, was sufficient to establish an unusual or extraordinary stop, it was incumbent on the trial court to inform the jury clearly that such a stop calls for an explanation by the defendant carrier, under *Connolly* and its predecessors. Buzzelli contends that under the charge as given, without the clear statement of this principle, the jury could have concluded that she had not proved negligence, because she had not proved a negligent cause of the stop in question. The Port Authority responds that from the trial court's statement "[a]lthough negligence may not be inferred from a stop which is sufficiently explained" the jury could reasonably assume that negligence could be inferred when the sudden stop is not sufficiently explained. Nonetheless, this Court agrees with the trial court that the charge as given did not cover the principle stated in Buzzelli's Point for Charge No. 4; therefore, it did not adequately and fully convey the applicable law to the jury. *See Fish v. Gosnell,* 316 Pa.Superior Ct. 565, 463 A.2d 1042 (1983).

 The Port Authority incorrectly cites a review standard requiring the Court to view all evidence in the light most favorable to the verdict winner and argues that any error in the charge was harmless because its evidence was sufficient to support the jury's verdict. That standard, however, applies to review of an order on a motion for judgment n.o.v., which is not involved in this case. *See La Frankie v. Miklich,* 152 Pa.Cmwlth. 163, 618 A.2d 1145 (1992). Moreover, the error was not harmless. Accordingly, the order of the trial court is reversed and this case is remanded.

### ORDER

AND NOW, this 16th day of April, 1996, the order of the Court of Common Pleas of Allegheny County is reversed, and this matter is remanded with instructions to grant the motion for a new trial.

Jurisdiction is relinquished.