**Lorraine MEUSSNER, Individually, and as the Administratrix of the Estate of Herbert C. Meussner, Appellant,**

v.

**PORT AUTHORITY OF ALLEGHENY COUNTY.**

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 1999.
Decided Feb. 4, 2000.

John Newborg, Pittsburgh, for appellant.

Colin Meneely, Pittsburgh, for appellee.

Before PELLEGRINI, J., FLAHERTY, J. and NARICK, Senior Judge.

FLAHERTY, Judge.

Lorraine Meussner, as administratrix of the estate of Herbert Meussner, and in her own right, appeals from an order of the Court of Common Pleas of Allegheny County (trial court) which denied the Meussners' motion to remove a compulsory non-suit. We affirm.

The Meussners presented the following evidence in their case in chief. On the afternoon of June 27, 1994, the Meussners were riding a bus owned and operated by the Port Authority of Allegheny County (PAAC). As the bus approached the stop which the Meussners wanted, Mrs. Meussner pulled the stop signal to indicate to the driver that a passenger wanted the next stop. The Meussners then stood and began to move forward toward the front of the bus. The Meussners testified that the bus jerked to a sudden stop and Mr. Meussner fell down and broke his eyeglasses and injured himself and that Mrs. Meussner almost fell

down but was not herself injured. Mrs. Meussner testified that she got angry at the bus driver and asked him "what is the matter with you." Reproduced Record (R.R.) at 55a. She testified further that she got angry at the bus driver because he had stopped "real hard." R.R. at 56a. Mrs. Meussner related that her husband was the only passenger who fell due to the quick stop. R.R. at 57a. In addition, the Meussners introduced as an exhibit the broken piece from Mr. Meussner's eyeglasses. At the close of the Meussners' case in chief, PAAC moved for a compulsory nonsuit which the trial court granted. The Meussners made a motion to remove the nonsuit which the trial court denied. From the trial court's order denying the Meussners' motion to remove the nonsuit, the Meussners appeal to this court.[1]

The sole question which the Meussners raise before this court is whether the Meussners established a prima facie case of sudden and/or unusual stop when viewing all of the evidence in the light most favorable to them thus entitling them to have their case presented to the jury? See Meussners' brief at p. 5.

The Meussners insist that the following evidence establishes their prima facie case.

Q. Tell me what happened just before your husband fell? How did the bus come to a stop?

A. [by Mrs. Meussner] It stopped real quick.

Q. Did you actually see your husband fall.

A. Yes.

Q. Did you say anything to the driver?

A. I said what is the matter with you. He said to me—I say you are the driver.

Q. Were you angry at that time?

A. Yes, I was.

---

1. Appellate review in an appeal from a trial court's denial of a motion to remove a compulsory nonsuit is limited to determining whether the trial court abused its discretion or committed an error of law. *Robinson v. City of Philadelphia,* 149 Pa.Cmwlth. 163, 612 A.2d 630, 632 (1992). In reviewing an order denying the removal of a compulsory nonsuit, this court must view the evidence in a light most favorable to the plaintiffs, giving them the benefit of all reasonable inferences. *Id.*

Q. Why was that?

A. Because he stopped real hard.

Meussners' brief at p. 11, quoting the R.R. at 55a—56a. In addition, the Meussners' point to their testimony that notwithstanding the fact that Mrs. Meussner had pulled the cord to signal for the next stop, as the Meussners were walking toward the front of the bus, the driver did not see them "right away." R.R. at 27a. The Meussners also point to the fact that Mr. Meussner testified that when the driver applied the brakes, he (Mr. Meussner) went "flying forward." R.R. at 27a. The Meussners insist that this establishes a prima facie case of negligence entitling them to get to the jury.

■ However, the Supreme Court has established a rather stringent standard for what constitutes a prima facie case in the so-called "jerk or jolt" or "sudden stop" type cases. The longstanding rule of law reiterated by the Supreme Court over forty years ago is as follows:

[i]t is well established by a long line of decisions that testimony indicating that a moving trolley car jerked suddenly or violently is not sufficient, of itself, to establish negligence in its operation. There must be a showing of additional facts and circumstances from which it clearly appears that the movement of the car was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation, and nothing short of evidence that the allegedly unusual movement had an extraordinarily disturbing effect upon other passengers, or evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently establishes the unusual character of the jolt or jerk, will suffice.

*Connolly v. Philadelphia Transportation Company*, 420 Pa. 280, 283, 216 A.2d 60, 62 (1966), *quoting, Staller v. Philadelphia Rapid Transit Co.*, 339 Pa. 100, 103, 14 A.2d 289, 291 (1940). Thus, in order for a plaintiff to merit the submission of the case to the jury, the plaintiff must establish not only that there was a jerk or stop but that the jerk or stop was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation. *See also, Sanson v. Philadelphia Rapid Transit Co.*, 239 Pa. 505, 508, 86 A. 1069, 1070 (1913)("We agree, that where the negligence charged is an unusual or extraordinary jump or jerk of a trolley car, the burden is upon the plaintiff to prove the extraordinary character of the jump or jerk in order to make out a case.")

■ Establishing that the jerk or stop was so unusual and extraordinary may be accomplished by one of two routes as set forth in *Connolly*. To do so, a plaintiff must show one of two things: 1) the stop had an extraordinarily disturbing effect upon other passengers or 2) the manner of the occurrence of an accident or the effect of which upon the plaintiff inherently establishes the unusual character of the jolt or jerk. In order to establish a prima facie case, the plaintiff may offer evidence which establishes that the allegedly unusual stop had an "extraordinarily disturbing effect upon other passengers." *See, e.g., Watson v. Pittsburgh Railways Co.*, 183 Pa.Super. 473, 132 A.2d 718 (1957)(evidence which showed that a passenger other than the injured plaintiff was thrown out of her seat by the sudden stop was sufficient to warrant submission of the case to the jury). Moreover, testimony that other passengers merely lurched forward or were jostled about has been held not sufficient to establish a prima facie case. For the Supreme Court has declared that

"It is common knowledge that a passenger can be thrown out of his seat only by an unusual or extraordinary jerk, whereas it is not unusual for persons to lose their balance while standing or walking in a car if an ordinary or moderate jerk occurs." *Smith v. Pittsburgh Rys. Co.* supra, 314 Pa. at page 544, 171 A. at page 880 .... Nor is the deficiency in [plaintiff-]appellee's evidence supplied by the testimony of the witness [and

fellow passenger] that the jolt "jerked me back on the seat" or that of Trube [another fellow passenger] that he observed "people slipping about in their seats." In *Smith v. Pittsburgh Rys. Co.*, [314 Pa. 541, 171 A. 879 (1934)], it was held that a statement that other passengers were "jolted about" did not constitute evidence of negligent operation, and a like conclusion was reached in *McClusky v. Shenango Val. Traction Co.*, [105 Pa.Super. 275, 161 A. 424, 425 (Pa.Super.1932)] where it was testified that "everybody in the car lurched." . . . . To permit of an inference that the jerk or jolt was excessive, based upon the effect upon other passengers, it must clearly be shown not only that they were affected by the movement, but to a greater extent than is usual. . . .

*Hufnagel v. Pittsburgh Railways Co.*, 345 Pa. 566, 569, 29 A.2d 4, 6 (1942).

■ The Meussners suggest that Mr. Meussner's testimony that Mrs. Meussner, while she was standing, almost fell when the bus came to a stop, satisfies the requirement of showing an "extraordinarily disturbing effect upon other passengers." Meussners' brief at pp. 16–17. However, we disagree. This testimony does not rise to the level required in *Hufnagel.* We find no legally significant distinction between testimony that another standing passenger almost fell, as was provided here, and that other standing passengers lost their balance as was discussed in *Hufnagel. See also Herholtz v. West Penn Railways Co.*, 362 Pa. 501, 66 A.2d 839 (1949)(testimony of plaintiff that the sudden stop caused other passengers to lose their balance and fall against her was not sufficient to warrant submission of the case to a jury, hence compulsory non suit was properly

entered) [2]; *Endicott v. Philadelphia Rapid Transit Co.*, 318 Pa. 12, 177 A. 17 (1935)(testimony that passengers who were standing "whirled around" or "twirled around" on supporting straps was not sufficient to show an extraordinary jolt or jerk); *Smith v. Pittsburgh Railways Co.*, 405 Pa. 340, 175 A.2d 844 (1961)(even though there was testimony establishing that another passenger fell to the floor of the street car, as noted in Justice Musmanno's dissent, the majority held the evidence was insufficient to merit submission of the case to the jury). Accordingly, the Meussners failed to establish a prima facie case on the basis that the stop was so unusual as to be beyond the reasonable expectation of passengers by showing that the stop had an extraordinarily disturbing effect upon other passengers.

The alternative grounds for meriting submission of the case to the jury on the basis that the stop was so unusual that it was beyond the reasonable expectation of passengers is by showing the manner of the occurrence of an accident or the effect of an accident upon the plaintiff which inherently establishes the unusual character of the jolt or jerk. *Connolly.*

■ PAAC argues that the requirement of showing an accident must mean that the bus was in an accident of some sort, e.g., collision with another vehicle or with a stationary object. Otherwise, if the injury to the plaintiff is deemed to be the accident sufficient to meet this requirement then every suit involving a plaintiff in a jerk or jolt case will get to the jury because by definition, there will be an injured plaintiff. *See* PAAC's brief at p.7. We disagree with PAAC. The clear language utilized by the Supreme Court shows that the accident happening to the

---

**2.** *Cf. Buzzelli v. Port Authority of Allegheny County*, 674 A.2d 1186, 1189 (Pa.Cmwlth. 1996) which, without referencing *Herholtz*, held that "[f]or standing passengers to be thrown forward without the ability to control their movement, such that they knock a passenger who is holding on to a railing off her feet, is an effect to a greater extent than

usual." We note that unlike in *Buzzelli*, there is no testimony here that other standing passengers were thrown forward without the ability to control their movement such that they knocked a passenger who was holding onto a railing off her feet. Rather the only testimony as to the effect on other passengers here is that Mrs. Meussner "almost fell."

plaintiff is sufficient by itself to merit submitting the case to the jury if the nature of the accident itself inherently shows the unusualness of the stop. *See, e.g., Buzzelli v. Port Authority of Allegheny County,* 674 A.2d 1186, 1189, n. 3 (Pa.Cmwlth. 1996)("The review of cases shows that the 'accident' referred to in the *Staller* test is the injury to the plaintiff .... but the test does not require proof of a collision with another vehicle or with something else in order to establish an 'accident.' ").

A review of the cases shows the kind of evidence which has been held to demonstrate that the circumstances of the accident inherently establish the unusual nature of the stop. *See, e.g., Smith v. Pittsburgh Railways,* 314 Pa. at 543, 171 A. at 880 where the court pointed out that the case of *Tilton v. Philadelphia Rapid Transit Co.,* 231 Pa. 63, 79 A. 877 (1911) "presented strong intrinsic evidence of the unusual character of the jolt or jerk." The Court in *Smith v. Pittsburgh Railways* stated that

> [i]n the Tilton Case plaintiff was seated when the sudden stop occurred, and was thrown violently forward against the seat in front of him. This of itself was evidence of the unusual nature of the jerk; it is common knowledge that a passenger can be thrown out of his seat only by an unusual or extraordinary jerk, **whereas it is not unusual for persons to lose their balance while standing or walking in a car if an ordinary or moderate jerk occurs.**

*Smith v. Pittsburgh Railways Co.,* 314 Pa. at 544, 171 A. at 880 (emphasis added). *Accord Holutin v. Philadelphia Rapid Transit Co.,* 89 Pa.Super. 326, 328 (1926)("There may be, it is true, intrinsic evidence of the unusual jolt or jerk by its effect on the person injured but in the present case, there is none, for it is not unusual for persons to lose their balance when standing in a moving car."). We simply note that herein, the Meussners were walking in the bus at the time of the allegedly unusual jerk.

In addition, the courts have suggested that the character of a plaintiff's fall may constitute intrinsic evidence of the usualness of the stop. *See, e.g., McClusky v. Shenango Valley Traction Co.,* 105 Pa.Super. 275, 161 A. 424, 425 (1932), wherein the court stated that

> the character of plaintiff's fall was not so violent and unusual as to permit the jury to predicate on it alone a finding that the jerk was extraordinary and unusual, and therefore, negligent. As we have pointed out before, it is common knowledge that one's balance or equilibrium is more easily lost when walking in a moving car than when seated.

The only evidence herein pointed to regarding the character of the violence of the Mr. Meussner's fall for the inference that the stop was extraordinary or unusual was the bent glasses. However, we find this case controlled by *Hill v. West Penn Railways Co.,* 340 Pa. 297, 16 A.2d 527 (1940).

In *Hill,* the plaintiff testified that she had just gotten on the trolley and was walking to her seat when the trolley stopped "real hard" with a "terrific" and "awful" jerk. This stop caused her to fall and fracture her hip. The trial court entered a compulsory non-suit. Notwithstanding that the fall caused her to fracture her hip, the Supreme Court, affirmed the trial court and held that

> [s]ince it is not unusual for persons to lose their balance while standing or walking in a moving trolley car if an ordinary or moderate jerk occurs, ... a fall occasioned under circumstances like those here presented is not so violent and unusual in character as to permit a jury to predicate on it alone a finding that the jerk was extraordinary and unusual and therefore the result of negligent operation....

Here, as in the *Staller* case, appellants' evidence as to the manner in which the accident occurred and in its effect upon her is entirely consistent with, and indicates nothing more than, a

mere loss of equilibrium and a fall as a result thereof[.]

*Hill,* 340 Pa. at 299, 16 A.2d at 528–29. Likewise here, we cannot conclude that Mr. Meussner's fall, while walking on the moving bus when it came to a stop, causing him to bend the metal frame of his glasses and causing him cuts to his face, was so unusual of an accident that its very nature established an extraordinary stop beyond the reasonable anticipation of a passenger.

Nevertheless, the Meussners argue that this case is controlled by our recent decision in *Buzzelli.* PAAC asserts that *Buzzelli* is distinguishable. We agree with PAAC. In *Buzzelli,* the court concluded that there was sufficient evidence to demonstrate that the stop therein was so unusual as to be beyond a passenger's reasonable anticipation. The evidence which the court in *Buzzelli* pointed to was that

> [b]oth Buzzelli and her witness testified that the bus was accelerating immediately before it was taken to a complete stop by a hard application of the brakes. Buzzelli testified further that the bus sat stopped in the street for over a minute, without taking on or letting off passengers. There are no circumstances in which such a stop is within "the ordinary and customary operation" of a common carrier bus.

*Buzzelli,* 674 A.2d at 1189. We note that, unlike *Buzzelli,* there is no testimony here that the bus immediately accelerated before coming to a sudden stop and that the bus sat for a minute in the street without taking on or letting off passengers.[3] Thus, the evidence which *Buzzelli* found sufficient to establish an extraordinary stop is simply missing herein, rendering *Buzzelli* not controlling.

As the Meussners failed to present any evidence which could legally support a finding of a stop so extraordinary as to be beyond a passenger's reasonable expectation, we cannot conclude that the trial court abused its discretion or committed an error of law in not removing the compulsory non-suit.[4]

## *O R D E R*

AND NOW, this 4th day of February, 2000, the order of the Court of Common Pleas of Allegheny County, Civil Division, dated December 11, 1998 and docketed at GD No. 96–8334 is hereby affirmed.

---

**3.** *Buzzelli* does not cite *Holutin v. Philadelphia Rapid Transit Co.,* 89 Pa.Super. 326, 328 (1926). In *Holutin,* a passenger signaled to get off the trolley, got up from her seat and started walking toward the front of the car. The plaintiff testified that the car slowed down a little bit but instead of stopping it speeded up again, and when the plaintiff informed the conductor she wanted to get off, he made a "hard stop" so suddenly that it threw the plaintiff off her feet causing her injuries. The court concluded that this evidence was insufficient to make out a case of negligence. Presumably, it is the addition of the bus sitting in the street for a minute without taking on or letting off passengers, which renders *Holutin* distinguishable.

**4.** Moreover, because the Meussners failed to establish a prima facie case, i.e., failed to establish that the stop was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation, the burden never shifted to PAAC to present an explanation of the stop. *See,* e.g., *Schilling v. Pittsburgh Railways Company,* 394 Pa. 126, 131, 145 A.2d 688, 691 (1958)("In cases such as the present case, where [plaintiff-]appellants are relying on the 'sudden stop' doctrine, the unusual or extraordinary character of the stop must be shown before the transit company is required to produce a reasonable and satisfactory explanation....").