**Niah MARTIN, Appellant**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.**

Commonwealth Court of Pennsylvania.

Argued Feb. 14, 2012.

Decided Apr. 2, 2012.

Publication Ordered June 28, 2012.

Andrew R. Spirt, Philadelphia, for appellant.

Anne P. Roski, Philadelphia, for appellee.

BEFORE: LEADBETTER, Judge, and COHN JUBELIRER Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

In this negligence action involving injuries sustained by a passenger on a Southeastern Pennsylvania Transportation Authority (SEPTA) bus, appellant Niah Martin (Plaintiff) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court)[1] that granted SEPTA's motion for summary judgment. The trial court determined Plaintiff's evidence, viewed in a light most favorable to her, failed to establish facts sufficient to meet the threshold requirements for recovery under the "jerk and jolt" doctrine. Plaintiff contends that in granting summary judgment the trial court: erred in disregarding a reasonable inference from Plaintiff's testimony that she fell because the bus abruptly accelerated and then unexpectedly stopped; and, erred in applying the jerk and jolt doctrine where

Plaintiff testified she fell as a result of two jerks (a rapid acceleration followed by a sudden deceleration). Upon review, we affirm.

## I. Background

In December 2007, Plaintiff boarded a SEPTA bus at the intersection of Wayne Avenue and School House Lane in Philadelphia. The only standing passenger, Plaintiff began walking down the aisle when the bus suddenly accelerated and then stopped, causing her to fall before she got to the center doors. Paramedics transported Plaintiff to a hospital emergency room for treatment of head, neck and back injuries. Plaintiff's head and neck injuries eventually resolved, but her back injuries persisted.

In 2009, Plaintiff commenced her negligence action by writ of summons. Thereafter, Plaintiff filed a complaint alleging SEPTA's negligent operation of the bus caused her fall, which resulted in substantial injuries, including head, neck and back injuries. Plaintiff's claim for damages fell within the $50,000 arbitration limit. A board of arbitrators ultimately awarded Plaintiff $20,000 in damages.

Plaintiff appealed the arbitrators' award and requested a jury trial. Following discovery, SEPTA filed a motion for summary judgment. SEPTA urged that Plaintiff's deposition testimony that the bus suddenly jerked, standing alone, was insufficient to establish negligence on the part of a transit authority. Given the absence of evidence of a truly unusual or extraordinary jerk or jolt, or evidence other passengers were affected in extraordinary or unreasonable ways, SEPTA sought judgment as a matter of law pursuant to the "jerk and jolt" doctrine. *See Connolly v. Phila. Transp. Co.*, 420 Pa. 280, 216

---

1. The Honorable Idee C. Fox presided.

A.2d 60 (1966) (to recover under the jerk and jolt doctrine, a bus passenger must establish that the jerk or jolt was so unusual or extraordinary as to be beyond a passenger's reasonable anticipation, or that the jerk or jolt had an extraordinarily disturbing effect on other passengers); *Meussner v. Port Auth. of Allegheny County,* 745 A.2d 719 (Pa.Cmwlth.2000) (same). Here, SEPTA asserted, Plaintiff proffered no evidence to establish that any movement of the bus was so unusual or extraordinary as to exceed a passenger's reasonable anticipation. Further, Plaintiff provided no evidence that the movement of the bus disturbed any other passengers.

Ultimately, the trial court granted SEPTA's motion for summary judgment. In an opinion in support of its order, the trial court recognized there are two ways to show that a jerk or stop was so unusual and extraordinary as to exceed a passenger's reasonable anticipation: (1) the jerk or jolt had an extraordinarily disturbing effect on other passengers or, (2) the manner of occurrence of the accident or its effect upon the plaintiff inherently established the unusual or extraordinary character of the jerk or jolt. *Connolly; Meussner.*

The trial court also rejected Plaintiff's argument that the facts in the present case were similar to those in *Buzzelli v. Port Authority of Allegheny County,* 674 A.2d 1186 (Pa.Cmwlth.1996), where this Court determined the plaintiff met her threshold burden of proof under the jerk and jolt doctrine. In *Buzzelli,* the plaintiff, one of many standing passengers on a crowded bus, fell and suffered injuries when the bus suddenly stopped. The plaintiff testified the bus accelerated away from the bus stop at an excessive rate of speed; she estimated the bus accelerated to approximately 35 to 40 miles per hour (mph) in a 25 mph zone. The driver then suddenly slammed on the brakes. The sudden stop sent a crush of other standing passengers forward into plaintiff. Although the plaintiff held onto a seatback railing while standing, the crush of other passengers knocked her down.

Here, the trial court, in distinguishing *Buzzelli,* reasoned (with emphasis added):

Plaintiff argues that the instant case does not fit within the 'jerk and jolt' case law doctrine because Plaintiff attributes her fall to more than 'a mere acceleration,' but also a deceleration or sudden stopping of the bus. Plaintiff cites [*Buzzelli* ] to suggest that ... her testimony of an unusually hard stop is enough that would require the carrier to explain the hard stop; and, given all the facts, was sufficient to meet the threshold requirements under the 'jerk or jolt' doctrine. *Buzzelli,* 674 A.2d at 1190. This Court does not agree.

Plaintiff's reliance on *Buzzelli* is misplaced. In *Buzzelli,* passengers were thrown forward, unable to control their movement, and with such force to knock a passenger holding a railing off her feet. Also, in *Buzzelli,* [the plaintiff] presented evidence of the bus travelling at an excessive rate of speed prior to breaking. *In the instant case. Plaintiff was the only person to fall. Plaintiff does not know of any other passengers that were jostled. Plaintiff does not know how fast the bus was travelling at the time, and cannot even say she was holding onto anything at the time she fell. The facts of this case, even when taken in a light most favorable to [P]laintiff, do not establish negligence. There is no evidence that anything outside of the ordinary happened besides Plaintiff loosing [sic] her balance while standing on a bus as it was pulling away from a stop.* Clearly, Summary Judgment in favor of SEPTA.

Tr. Ct., Slip. Op., 04/20/11, at 4–5. Plaintiff appeals.

## II. Issues

On appeal,[2] Plaintiff contends the trial court erred in disregarding a reasonable inference in Plaintiff's testimony that she fell because the bus abruptly accelerated and then unexpectedly stopped. Plaintiff also asserts the trial court erred in applying the jerk and jolt doctrine where she testified that she fell as a result not only of a rapid acceleration, but also of a sudden deceleration.

## III. Discussion

### A. Plaintiff's Argument

Plaintiff first contends the trial court erred by mischaracterizing her testimony. Plaintiff asserts she testified she fell because the bus abruptly accelerated, then it unexpectedly stopped. The trial court, however, mischaracterized Plaintiff's testimony as indicating she fell shortly after the bus moved from the stop.

More specifically, Plaintiff argues the trial court erred by resolving a genuine issue of material fact against the non-moving party.[3] Put another way, the trial court usurped the role of the jury by finding Plaintiff fell because the bus accelerated away from a stop rather than from the combined effect of a rapid acceleration and

sudden stop. Plaintiff maintains she did not fall as a result of the initial acceleration from the bus stop.

At deposition, Plaintiff testified on examination by SEPTA's counsel as follows (emphasis added):

Q. Can you describe the incident, tell me what happened?

A. I boarded the bus. I went to walk to my seat and I was on the ground.

Q. *Do you know why you fell?*

A. *I believe the bus pulled off and then stopped, but I am not sure exactly why I fell.*

. . . .

Q. Would it be fair to say that there—the reason you believe you fell is because the operator started to move from the bus stop before you took a seat?

A. I don't understand.

Q. Did you fall before you were able to take a seat?

A. Yes.

Q. *And did you fall when the operator started to move the bus from the bus stop?*

A. *No, not that I remember.*

Q. From the time that the operator started to move the bus away from the stop how far had the bus moved before you fell.

---

2. Our review of a trial court order granting summary judgment is limited to determining whether the trial court abused its discretion or erred as a matter of law. *Kuniskas v. Commonwealth*, 977 A.2d 602 (Pa.Cmwlth. 2009). When reviewing a trial court's grant of summary judgment, we examine the record in a light most favorable to the non-moving party, accepting as true all well pleaded facts and reasonable inferences to be drawn from those facts. *Id.*

3. Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991). Summary judgment may be granted only in cases where the right is clear and free from doubt. *Id.* The moving party bears the burden of proving the nonexistence of any genuine issue of material fact. *Id.* The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.*

A.  Not far.

Q.  When you say 'not far' did it move a couple of inches,

a foot, are you able to tell us how far it moved before you fell?

A.  No, I'm not able to tell you.

Q.  And again, do you know why you fell that day?

A.  No.

Q.  When you fell you were facing toward the back of the bus?

A.  Yes.

Dep. of Niah Martin (Martin Dep.), 08/04/10, at 25–27, Reproduced Record (R.R.) at 32–33.

Plaintiff also contends this case, like *Buzzelli*, is distinguishable from other jerk and jolt cases. Plaintiff argues the jerk and jolt doctrine is essentially judicial recognition that a sudden acceleration of a public transportation vehicle is not sufficient by itself to establish negligence because such accelerations are not unanticipated or unexpected. Here, however, Plaintiff's fall resulted from a quick succession of two jerks: a rapid acceleration followed by a sudden stop.

Therefore, Plaintiff continues, the facts here are close to those in *Buzzelli*, where the plaintiff fell after the bus quickly accelerated and then came to a sudden stop. Plaintiff asserts a reasonable reading of her testimony indicates she fell after the bus came to a stop. However, she did not know how to apportion the cause of her fall between (1) the bus starting and (2) the bus stopping. The fact that Plaintiff fell after the bus stopped, not after it started, means the combination of acceleration and the sudden stop caused her fall. "Put simply, the doctrine announced in *Connolly* and its progeny is inapplicable here because [Plaintiff] testified that she fell as a result of a sudden acceleration followed by a deceleration." Plaintiff's Br. at 9.

Thus, Plaintiff urges the trial court's failure to apply this reasonable interpretation of her testimony constitutes an error of law.

### B.  SEPTA's Response

SEPTA counters that the trial court properly applied the jerk and jolt doctrine and granted summary judgment. It contends Plaintiff failed to assert facts showing that any movement of the bus was unusual or extraordinary beyond a passenger's reasonable anticipation.

SEPTA also argues there is no evidence of two successive, unusual or extraordinary jerks or jolts in the record. Rather, Plaintiff merely testified the bus started suddenly and then stopped, and she fell. Additionally, SEPTA asserts the jerk and jolt doctrine applies not only to instances of abrupt acceleration, but also to sudden stops or deceleration.

For example, in *Asbury v. Port Authority of Allegheny County*, 863 A.2d 84 (Pa. Cmwlth.2004), a third-trimester pregnant plaintiff boarded a transit authority bus and fell while walking to her seat when the bus accelerated away from the stop. The plaintiff's fall resulted in a broken femur. Applying the jerk and jolt doctrine, the trial court held the plaintiff failed to present sufficient evidence of negligence as a matter of law. In so doing, the trial court determined the plaintiff failed to establish the alleged jerking or jolting of the bus "had a disturbing effect on other passengers or that the nature of the accident inherently established the unusual character of the jolting movement." *Id.* at 88. On appeal, this Court affirmed.

In *Meussner*, a sudden stop case, a standing passenger preparing to exit a bus fell and suffered injuries when the bus suddenly jerked to a stop. The injured passenger's wife standing next to him almost fell; she described the stop as "real

hard." *See id.*, 745 A.2d at 721. However, no other passengers fell or were hurt. Noting that it is not unusual for standing passengers to lose their balance and fall on a moving trolley or bus due to an ordinary or moderate jerk, we affirmed the trial court's grant of non-suit in *Meussner*. We reasoned the plaintiffs failed to present any evidence which could legally support a finding of a stop so unusual or extraordinary as to be beyond a passenger's reasonable anticipation.

More recently, in *Jackson v. Port Authority of Allegheny County*, 17 A.3d 966 (Pa.Cmwlth.2011), we again applied the jerk and jolt doctrine in a case involving a sudden stop. In *Jackson*, the plaintiff and her granddaughter rose from their seats and pulled the bell cord to signal for a stop as the bus approached their stop. The bus driver missed the stop and "stomped on the brakes." *Id.* at 968. The sudden stop caused the plaintiff to fall and she suffered a broken kneecap.

Thereafter, the plaintiff and her granddaughter testified at an arbitration hearing. The plaintiff testified she fell on her knee when the driver stomped on the brakes. The plaintiff also stated she slipped on ketchup and water on the floor spilled by other passengers. The plaintiff's granddaughter, however, testified she did not fall because she held onto a bar. She further testified there were four seated passengers on the bus who were not injured or thrown from their seats. The arbitrators entered an award for plaintiff.

The transit authority appealed and filed a motion for summary judgment. Relying on *Meussner*, the trial court entered summary judgment. On appeal, this Court also held the evidence, viewed in a light most favorable to plaintiff, failed to establish that the stop itself was so unusual or extraordinary as to be beyond a passenger's reasonable anticipation. Thus, the jerk and jolt doctrine barred the plaintiff's claim in Jackson.

Here, SEPTA argues, the trial court correctly determined Plaintiff failed to establish any unusual or extraordinary movement of the bus, either acceleration or deceleration, beyond a passenger's reasonable anticipation. *Jackson; Asbury; Meussner.*

In addition, SEPTA argues the trial court did not err in finding *Buzzelli* distinguishable from the present case. In *Buzzelli*, we determined the plaintiff's evidence, if credited, demonstrated excessive speed and an unusual stop. Both of these factors could establish such an unusual or extraordinary movement of the bus as to be beyond a passenger's reasonable anticipation. Thus, we determined the trial court's jury charge did not adequately inform the jury that such a stop met the plaintiff's threshold burden under the jerk and jolt doctrine and therefore required an explanation by the transit authority.

Here, in contrast, there is no evidence of excessive speed or injury to any other passengers. Plaintiff could not estimate the speed of the bus; she also testified no other passengers were hurt. In short, Plaintiff failed to provide any objective evidence characterizing the movement of the bus as unusual or extraordinary. Thus, SEPTA asserts, the trial court properly granted summary judgment. *Meussner.*

## C. Analysis

As evidenced by *Jackson, Asbury* and *Meussner*, the jerk and jolt test is difficult to meet. Here, Plaintiff contends a combination of the bus driver's abrupt acceleration from the bus stop and sudden stop before she reached a seat meets the threshold requirement of an unusual or extraordinary jerk or jolt beyond a passen-

ger's reasonable anticipation. We disagree.

■ As the trial court recognized, there are two ways to show that a jerk or stop was so unusual and extraordinary as to exceed a passenger's reasonable anticipation: (1) the jerk or jolt had an extraordinarily disturbing effect on other passengers or, (2) the manner of occurrence of the accident or its effect upon the plaintiff inherently established the unusual or extraordinary character of the jerk or jolt. *Connolly; Meussner.*

Plaintiff failed to present evidence supporting a finding that either the bus's acceleration or sudden stop constituted an unusual and extraordinary jerk or jolt beyond a passenger's reasonable anticipation. No other passengers, all of whom were seated, were affected by the movement of the bus. In addition, Plaintiff failed to present any other objective evidence of an unusual or extraordinary movement of the bus. Plaintiff did not know how fast the bus was going when it pulled away from the stop. N.T. at 29–30; R.R. at 33–34. Plaintiff could not recall if she held onto anything as she proceeded down the aisle. *Id.* at 28; R.R. at 33. Rather, Plaintiff testified the bus started and then stopped, and Plaintiff fell in the aisle before she reached a seat. N.T. at 25; R.R. at 32.

■ We also reject Plaintiff's contention that the jerk and jolt doctrine is simply judicial recognition that a sudden acceleration of a public transportation vehicle, *by itself,* is insufficient by itself to establish negligence. Such accelerations are not unanticipated. Case law, however, clearly indicates that the jerk and jolt doctrine also applies to sudden stops. *Jackson; Meussner.*

Moreover, Plaintiff's reliance on *Buzzelli* is misplaced. As the trial court discerned, *Buzzelli* is readily distinguishable. Although *Buzzelli* involved an acceleration and sudden stop, the plaintiff in *Buzzelli* presented evidence of excessive speed and an unusual stop which flung a crush of passengers into her and knocked her down. Both of these factors are evidence of an unusual, unanticipated movement of the bus supporting a presumption or an inference of negligence by the bus driver. Consequently, the plaintiff in *Buzzelli* met her threshold burden of demonstrating an unusual jerk or jolt requiring an explanation by the transit authority.

Conversely, in the present case, Plaintiff merely testified the bus started and stopped before she could reach a seat. Such circumstances are not beyond a passenger's reasonable anticipation. As we emphasized in *Meussner,* it is not unusual for a person to lose his or her balance while standing or walking on a bus if an ordinary or moderate jerk occurs. Nothing in Plaintiff's testimony supports a finding that anything more than an ordinary or moderate jerk or jolt happened here. Therefore, the trial court did not err in granting summary judgment under the jerk and jolt doctrine. *Jackson; Asbury; Meussner.*

## IV. Conclusion

For the above reasons, we discern no error in the trial court's grant of SEPTA's motion for summary judgment. Accordingly, we affirm.

## ORDER

**AND NOW,** this 2nd day of April, 2012, the order of the Court of Common Pleas of Philadelphia County is **AFFIRMED.**