IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Louise Devlin,                          :
                    Appellant           :
                                        :
        v.                              : No. 1076 C.D. 2015
                                        : Argued:  February 8, 2016
Southeastern Pennsylvania               :
Transportation Authority                :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI              FILED: February 24, 2016


        Louise Devlin (Devlin) appeals from an order of the Philadelphia County Court of Common Pleas (trial court) granting Southeastern Pennsylvania Transportation Authority's (SEPTA) motion for summary judgment based on Devlin's failure to satisfy Pennsylvania's "jerk and jolt" doctrine.  We affirm.


**I.**

        In September 2013, Devlin was a passenger on SEPTA's Route 14 bus which was being operated by Rudolph Spencer.  At around 800 Rockhill Drive, in Bensalem, Pennsylvania, Devlin was in the process of paying her bus fare when the bus allegedly came to an abrupt stop, causing Devlin to fall and sustain injuries. As a result, in July 2014, Devlin filed a complaint against SEPTA,

asserting claims of negligent entrustment and respondeat superior and seeking damages for her injuries.[1]

At her deposition, Devlin testified that after she boarded the bus, she realized she did not have enough money for bus fare in her hands, so she told the bus driver that she needed a moment to get the money. She stated that she then took a few steps toward the back of the bus and stopped at a rack on which she placed her purse to retrieve the bus fare. Devlin explained that she was eager to give the bus driver the bus fare as quickly as possible, so she did not sit down while looking for bus fare. She further stated that although there were railings for her to hold on to, she could not get to them.

She testified that as she opened her purse, her "back was turned towards the window and then all of a sudden [she's] flying back." (R.R. at 189a.) She elaborated that, "[The bus] was at a standstill and then it happened so fast that when I turned to get money, boom, I just went flying back…." (*Id.* at 190a.) Devlin explained:

> Q: All right. Can you tell me anything about the acceleration that the bus did?

---

[1] Devlin's complaint did not provide details as to how the accident occurred, nor did it specify the nature of her alleged injuries. It simply averred that due to SEPTA's negligence and carelessness, she suffered "various serious and permanent personal injuries, serious impairment of bodily function, permanent serious disfigurement, aggravation of certain injuries and/or other ills and injuries all to [her] great loss and detriment." (Reproduced Record (R.R.) at 4a.) The complaint alleged that *all* of Devlin's injuries are permanent in nature and *all* of the injuries have caused her great financial detriment and loss. The complaint additionally alleged that Devlin suffered, *inter alia*, emotional injuries and loss of earnings/earning capacity.

A:    Like I said to you before, it was fast.  Hard and fast.

Q:    And it was your understanding that that acceleration was from the bus going to a stop position and moving forward?

A:    To go forward, correct.

Q:    What happened to your body when this happened?

A:    When I was going it just went back hard.  The head, the back, and then I went down on my butt.  I was just lying there like wow.  It took the breath out of me.

(R.R. at 195-196a.)

However, at other times she attributed her falling not to sudden acceleration but to the driver's application of brakes "extremely hard."  (*Id.* at 229a.)  She differentiated the bus's braking on September 2013 from all other times she rode the bus, stating, "The other times were gentle.  This was hard." (*Id.*)

She testified that after the accident, the bus driver inquired if she needed an ambulance, and an ambulance drove her to Aria Hospital, where she underwent a CAT scan and was discharged upon negative results.  She stated that in the following weeks and months, she saw a number of doctors for pain she was experiencing in her head, neck, back and left knee.  She testified to experiencing "jolts" or sharp pain to her side, and a tingling sensation on each side of her clavicle going toward her chest.  She stated that she received regular treatments, such as cracking her head and neck and "using a clicker" to her back and knee,

which helped alleviate some of her pain. She further testified to undergoing a needle EMG, which showed nerve damage, and MRIs, which revealed a bulging disc in her neck and one in her back. Devlin also testified that she underwent four injections to her neck and two to her back which relieved pressure from her body.

In his deposition, Rudolph Spencer (Spencer), the bus driver, testified that he had to brake shortly after Devlin boarded the bus because of a traffic light but he denied recalling his speed at the time. Spencer did not recall much about the incident, only that as he was braking, "[Devlin] stumbled and fell into the front panel." (*Id.* at 115a.) He testified that he witnessed Devlin's fall with his peripheral vision as the panel is located in the front of the bus, near the driver. He stated that he did not hear her say or scream anything after falling, and that immediately after he witnessed her fall, he hit his emergency brakes. Spencer characterized his braking during the incident as "light" or "normal braking" and was unable to proffer an opinion as to how or why Devlin fell. (*Id.* at 118a.)

A multi-angle video recording of the incident SEPTA produced during discovery was offered into evidence. The video recording showed the entirety of the incident, including the street, the viewpoint of the driver, and the other passengers. The video depicts Devlin boarding the bus, partially paying the bus fare and moving to the luggage ledge located to the right of the bus doors, stopping there to look through her purse for the remainder of the bus fare, and failing to hold on to any available, nearby handrail. The video also shows Devlin falling to the floor of the bus 42 seconds after boarding.

Following discovery, SEPTA filed a motion for summary judgment, alleging that there were no issues of material fact, and that Devlin failed to establish evidence of an extraordinary jolt or any unreasonable impact on any other passenger as required by the "jerk and jolt" doctrine. In particular, SEPTA pointed out, *inter alia*, that video evidence established that the movement of the bus had no extraordinarily disturbing effect on any other passenger and that Devlin admitted to standing without holding on to anything and not paying attention when she fell. It further emphasized that Devlin admitted that no other passengers were affected by the bus's movement, and that the video showed Devlin failing to hold on to anything or to look out toward the front of the bus before falling. Additionally, SEPTA highlighted Spencer's testimony establishing that he applied light or normal braking at the time Devlin fell. In conclusion, SEPTA averred that although Devlin's fall allegedly caused her to suffer certain injuries, nothing in the record established that the manner of the incident or its effect on Devlin showed that the jerk and jolt was extraordinary.

The trial court granted SEPTA's summary judgment motion,[2] finding that Devlin was unable to satisfy her burden under the "jerk and jolt" doctrine

---

[2] The entry of summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Marks v. Tasman*, 589 A.2d 205, 206 (Pa. 1991). It may be granted only in cases where the right is clear and free from doubt. *Id.* The moving party has the burden of establishing the non-existence of any genuine issue of material fact. *Id.* In addition, the record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.*

given that the video evidence established that her fall was not a result of an unusual or extraordinary movement of the bus.

## II.

On appeal,[3] Devlin contends that the trial court erred in granting SEPTA's motion for summary judgment because she presented sufficient evidence for a jury to conclude that the movement of the bus was unusual and extraordinary based on the severity and extent of her injuries. In particular, Devlin points to evidence that she missed work due to her injuries, that she went through extensive medical treatment and testing, and that her tests revealed bulging discs and nerve damage.

Under the "jerk and jolt" doctrine, the plaintiff must establish that the jerk or stop of the bus was so unusual and extraordinary as to be beyond his or her reasonable anticipation by demonstrating: (1) that the stop had an extraordinarily disturbing effect on the other passengers; or (2) evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently establishes the unusual character of the jerk or jolt. *Connolly v. Philadelphia Transportation Company*, 216 A.2d 60, 62 (Pa. 1966); *Meussner v. Port Authority of Allegheny County*, 745 A.2d 719, 721 (Pa. Cmwlth. 2000). To make out a claim based on the jerk and jolt doctrine, our Supreme Court provided:

---

[3] Our review of a trial court order granting summary judgment is limited to determining whether the trial court abused its discretion or erred as a matter of law. *Kuniskas v. Commonwealth*, 977 A.2d 602 (Pa. Cmwlth. 2009). When reviewing a trial court's grant of summary judgment, we examine the record in a light most favorable to the non-moving party, accepting as true all well-pleaded facts and reasonable inferences to be drawn from those facts. *Id.*

6

> It is well established by a long line of decisions that testimony indicating that a moving trolley car jerked suddenly or violently is not sufficient, of itself, to establish negligence in its operation. There must be a showing of additional facts and circumstances from which it clearly appears that the movement of the car was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation, and nothing short of evidence that the allegedly unusual movement had an extraordinarily disturbing effect upon other passengers, or evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently establishes the unusual character of the jolt or jerk, will suffice.

*Connolly*, 216 A.2d at 64; *see also Jackson v. Port Authority of Allegheny County*, 17 A.3d 966 (Pa. Cmwlth. 2011).

Under that standard, "[t]o permit an inference that the jerk or jolt was excessive, based upon the effect upon other passengers, it must clearly be shown not only that they were affected by the movement, but to a greater extent than is usual…." *Meussner*, 745 A.2d at 722 (citation omitted); *see also Martin v. Southeastern Pennsylvania Transportation Authority*, 52 A.3d 385 (Pa. Cmwlth. 2012); *Watson v. Pittsburgh Railways Co.,* 132 A.2d 718, 720 (Pa. Super. 1957) ("[I]t is common knowledge that a passenger can be thrown out of his seat only by an unusual or extraordinary jerk, whereas it is not unusual for persons to lose their balance while standing or walking in a car if an ordinary or moderate jerk occurs.") (internal quotation marks and citation omitted). "Moreover, the mere location, type and extent of the injury is not sufficient evidence upon which to reconstruct the physical events of the event." *Asbury v. Port Authority of Allegheny County*, 863 A.2d 84, 90 (Pa. Cmwlth. 2004), *appeal denied*, 880 A.2d 1240 (Pa. 2005).

## III.

The question before us is whether there is a genuine issue of material fact as to whether Devlin could make out that the slowdown of the bus was so unusual or extraordinary as to fall within the jerk and jolt doctrine. Devlin testified that shortly after she boarded the bus, while standing and searching for change in her purse and not holding on, the bus either accelerated "hard and fast," or it stopped "extremely hard," thereby knocking her down.

Like the trial court, we reviewed SEPTA's video recording and after reviewing it, we agree with its observation that:

> At the time of the fall, the bus was traveling in the left lane towards an intersection, moving at a speed consistent with that of the surrounding traffic, with no other vehicles in close proximity. The movement of the bus at the time of [Devlin's] fall is such that, ***as established by the video***, only the slight forward movement of the other, seated passengers offers an indication that the bus was actually slowing to any measurable degree. Once the bus driver notices that [Devlin] has been injured, he brings the bus to a complete stop approximately five seconds after [Devlin's] fall. Distinctly absent from this multi-angle video is anything showing that the bus moved in an extraordinary or unpredictable way, or that any of the passengers, other than [Devlin] herself, were disturbed by its nearly imperceptible, pre-fall deceleration.

(R.R. at 241a) (emphasis in original) (internal citations omitted).

In this case, there is no countervailing evidence of the bus's excessive speed or any other factors indicating that this was an extraordinary jerk and jolt as

to be beyond Devlin's reasonable anticipation that would raise an issue of a disputed material fact. No matter whether she was knocked down by sudden acceleration or a sudden stop, it is not uncommon for a standing person on a bus to lose his or her balance if an ordinary or moderate jerk occurs. Although Devlin testified to the manner and extent of her injuries, neither injuries alone or, for that matter, the extent of her injuries, support an inference of an extraordinary or unusual jerk or jolt.

Accordingly, because there is no genuine issue of material fact, the trial court's order granting summary judgment is affirmed.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Louise Devlin,                          :
                    Appellant          :
                                        :
            v.                          : No. 1076 C.D. 2015
                                        :
Southeastern Pennsylvania               :
Transportation Authority                :

**O R D E R**

AND NOW, this 24<u>th</u> day of <u>February</u>, 2016, the order of the Philadelphia County Court of Common Pleas dated May 13, 2015, at No. 140604781, is affirmed.

_____
DAN PELLEGRINI, Senior Judge